# THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION CINCINNATI

CERISSA NEWBILL,

        Plaintiff,

    vs.

CAPT. RUSS NEVILLE, ET AL.,

        Defendants.

Case No.1:16-CV-00527-MRB

Judge Michael R Barrett

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. 27). This matter is fully briefed and ripe for disposition.

In her Complaint, Plaintiff Cerissa Newbill asserts five causes of action, without clearly framing them in terms of a specific claim under statute or common law. However, the Court interprets Plaintiff's counts as follows:

Count I: False Arrest, in violation of the "First, Fourth, and Fourteenth Amendments to the United States Constitution," under 42 U.S.C. § 1983, against all Defendants;

Count II: Malicious Prosecution, in violation of the "First, Fourth, and Fourteenth Amendments to the United States Constitution," under 42 U.S.C. § 1983, against all Defendants;

Count III: Infringement of Free Speech, in violation of the "First and Fourteenth Amendments to the United States Constitution," under 42 U.S.C. § 1983, against all Defendants;

Count IV: *Monell* claim, alleging municipal liability for creating policies that violate the "First, Fourth, and Fourteenth Amendments to the United States Constitution," under 42 U.S.C. § 1983, against Defendant Neville in his official capacity (*i.e.*, the City of Cincinnati); and

1

Count V:  Malicious Prosecution, in violation of Ohio common law, against all Defendants.

## I.  BACKGROUND

On November 25, 2014, Plaintiff, Cerissa Newbill, was among a group of individuals who participated in a rally in downtown Cincinnati to protest the shooting of Michael Brown. (Doc. 1, PageID 2-3; Doc. 23, PageID 133). At a post-rally demonstration, Sergeant Shawn George ("Defendant George") arrested Plaintiff for disorderly conduct, based on orders originating from Defendant Captain Russell Neville ("Defendant Neville").  (Doc. 1, PageID 3; Doc. 23, PageID 158).  Officer Anthony White ("Defendant White") was dispatched to the scene to transport Plaintiff to jail. (Doc. 1, PageID 3; Doc. 10, PageID 48).

Defendant White transported Plaintiff to the Hamilton County Justice Center where she was processed and detained.  (Doc. 26, PageID 474-76).  Defendant White signed a criminal complaint alleging that Plaintiff had engaged in disorderly conduct, a fourth-degree misdemeanor.  The day after her arrest, Plaintiff's bail was set at $1,000, with the condition that she wear an electronic monitor.  (Doc. 27-2, PageID 552).  In total, Plaintiff spent three days in jail, including Thanksgiving.  (Doc. 26, PageID 479).

On June 1, 2015, the City through its law department dropped the disorderly conduct charge.  (Doc. 24, PageID 279, 287).  However, the next day, a new complaint was filed against Plaintiff charging her with disorderly conduct under a different subsection of Ohio's disorderly conduct statute.  (*Id*.)  Plaintiff demanded a jury trial.  Thereafter, the City through its law department amended the complaint to reduce the disorderly conduct charge to a minor misdemeanor.  (Doc. 27-6, PageID 585),  In effect, Plaintiff was no longer entitled to a jury.

Plaintiff proceeded with a bench trial. (*Id.*) Defendant Neville testified against her. Judge Bernat, of the Hamilton County Municipal Court, denied Plaintiff's Rule 29 motion after the government rested. (Doc. 30-5, PageID 743). After all evidence was submitted, Judge Bernat acquitted Plaintiff. (*Id.* at 773).

The Parties disagree over the facts leading up to Plaintiff's arrest, and whether Defendant Neville testified truthfully before Judge Bernat.

### A. Plaintiff's Testimony

Plaintiff asserts that she lawfully engaged in her right to peacefully protest. (Doc. 26, PageID 471). Per the orders of law enforcement, protesters who remained after the organized rally concluded were required to remain on the sidewalks. (Doc. 23, PageID 126). Plaintiff claims that she remained on the sidewalk during the entire post-rally protest, with the exception of lawfully entering a crosswalk in order to cross the street at an intersection. (Doc. 26; PageID 466, 471) (Doc. 30-5, PageID 750-51). At some point thereafter, Plaintiff claims that Defendant George approached her, and told her to put her hands behind her back because she was under arrest. (Doc. 26, PageID 468). Plaintiff allegedly asked why she was under arrest, and was given no answer. (*Id.* at 468-69). Plaintiff claims that she had no contact with Defendant Neville. (*Id.* at 458).

### B. Defendant Neville's Testimony

Defendant Neville testified that he was on duty on November 25, 2014. (Doc. 23, PageID 95). Defendant Neville testified that, approximately one hour before the rally, all officers who were designated to be at the rally attended a meeting regarding the event. (*Id.* at 100). Defendant Neville stated that, at the meeting, he provided refreshers regarding departmental

policy. (*Id*. at 101-02). According to Defendant Neville, "depending on the circumstances," an arresting officer or an officer of supervisory rank would have the discretion to make the recommendation to make a physical arrest. (*Id*. at 105-06).

Defendant Neville stated that approximately 300 people attended to the organized rally. (*Id*. at 117). After the rally concluded, Defendant Neville stated that certain participants remained and began a march in the street, which was acceptable at the time. (*Id*. at 118-19). Defendant Neville followed on foot. (*Id*. at 118). While following on foot, Defendant Neville allegedly gathered information, through conversations in the crowd, suggesting that some participants intended to illegally enter the expressway. (*Id*. at 120).

Up to this point, there had been no arrests of or citations issued to rally/protest participants. (*Id*. at 121). However, the first arrests occurred after 20-25 people entered the expressway. (*Id*. at 123). Approximately seven to eleven of those individuals who entered the expressway were arrested. (*Id*.) After the march continued, the crowd dwindled to only about 35 participants, including Plaintiff. (*Id*. at 133).

Once the crowd began to dissipate, there came a point where Defendant Neville and/or another officer indicated to the remaining protestors (who were in the street) that they should remain on the sidewalk throughout the rest of the march. (*Id*. at 134). Defendant Neville testified that, initially, protestors complied with the directive to remain on the sidewalk. (*Id*.)

Defendant Neville testified that, after giving the group the directive to remain on the sidewalk, Plaintiff stepped into the street three times. (*Id*. at 140). According to Defendant Neville, Plaintiff would step into the street alone, while attempting verbally and through gestures to draw others into the street. (*Id*.) After being asked, and then directed to get back on the sidewalk, Plaintiff allegedly would return to the street. (*Id*.)

After Plaintiff allegedly entered the street a third time, Defendant Neville used his radio to direct other officers to arrest Plaintiff. (*Id*. at 155). Defendant Neville claims that he did not speak with Officer White, who filed the criminal complaint, that day or at any point. (*Id*. at 165). However, Defendant Neville did speak with Defendant George about the case. (*Id.* at 168). Defendant Neville was subpoenaed to testify at Plaintiff's municipal trial, and ultimately testified on behalf of the City. (*Id*. at 166-67). Defendant Neville testified at the trial that, while awaiting the arrival of the other officers, Plaintiff remained in the street. (*Id*. at 156). Defendant Neville testified that Plaintiff's refusal to exit the street led to her citation. (Doc. 30-5, PageID 729).

C.  Testimony of Officer George

On the day of the rally and post-rally protest, Defendant George first observed Plaintiff in the street with two or three other people. (Doc. 24, PageID 259). Defendant George heard Defendant Neville issue the directive that protestors should remain on the sidewalk. (*Id*.) Later, Defendant Neville gave orders to Lieutenant Vennemeyer, who communicated to Defendant George, the order to arrest Plaintiff for disorderly conduct. (*Id*. at 260). Defendant George stated that, when he arrested Plaintiff, she was on the sidewalk. (*Id*. at 320).

Defendant George told Plaintiff she was under arrest for disorderly conduct. (*Id.* at 261). Next, Defendant George placed handcuffs on Plaintiff, and Plaintiff asked why she was being arrested. (*Id*. at 262). At this point, Plaintiff stated that she did not do anything wrong, and that officers were violating her "amendment rights." (*Id*.) Defendant George continued to tell Plaintiff she was under arrest for disorderly conduct. (*Id*.) Defendant George then called for a car to transport Plaintiff to the justice center. (*Id*. at 265).

Defendant White was the individual who responded to Defendant George's radio call for transport. (*Id*. at 268). Defendant George informed Defendant White that Plaintiff had been

arrested for disorderly conduct. (*Id*.)  Defendant White signed the original criminal complaint.
(*Id*. at 269).  Defendant George told Defendant White that, because the command staff was the
one that gave directions to arrest Plaintiff, that the command staff would know what facts to
include in the complaint. (*Id*. at 272-73).

### D.  Testimony of Officer White

Defendant White was not present at the scene until he was dispatched to transport
Plaintiff to jail.  (Doc. 25, PageID 343). Upon arriving at the scene, Defendant George informed
Defendant White that Plaintiff was being arrested for disorderly conduct.  (*Id*. at 346).
Defendant White claims that he only spoke with Plaintiff during this time to get her information.
(*Id*. at 349). Plaintiff was polite and cooperative.  (*Id*. at 349). Defendant White said he
completed the arrest report with the information he received from Defendant George, because
Defendant White had not witnessed any of Plaintiff's conduct.  (*Id*. at 353, 357-58).  However, it
appears that, in June 2015, Defendant George was the officer who signed the complaint
amending the charges against Plaintiff.  (Doc. 24, PageID 288).

## II.  ANALYSIS

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the
movant shows that there is no genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law."  A dispute is "genuine" when "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A court must view the
evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).
The moving party has the burden of showing an absence of evidence to support the nonmoving

party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Rule 56(c) explains in relevant part that a party asserting that a fact cannot be genuinely disputed must support the assertion by citing to "particular parts of materials in the record, including depositions, documents...affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials" or alternatively by showing that the adverse party "cannot produce admissible evidence to support the fact." This Court must consider the cited materials, but "may" consider other materials in the record. Rule 56(c)(3).

Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

A. Federal Claims[1]

The law as codified under 42 U.S.C. § 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Tuttle v. Oklahoma City,* 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flint*

---

[1] The Court analyzes Counts I through III, which are all federal claims, under federal law. The Court would note that, in their briefing, Defendants set forth the elements of Counts I through III citing Ohio law, which is inapplicable. (Doc. 27, PageID 538).

*v. Kentucky Dept. of Corrections,* 270 F.3d 340, 351 (6th Cir. 2001), *citing Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998) *and United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 33 (6th Cir. 1992). Here, there is no dispute that the Defendants' acts constituted state action. However, Defendants argue that they did not deprive Plaintiff of her constitutional rights. To the extent that the evidence supports such a constitutional violation, they argue that they are entitled to qualified immunity.

In resolving questions of qualified immunity at the summary judgment stage, courts engage in a two-pronged inquiry. The first question is whether the facts, "taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865, 188 L. Ed. 2d 895 (2014), quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). The Court must consider whether, "taken in the light most favorable to the party asserting the injury," the facts alleged show that each defendant's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). State actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id*. In response to an assertion of qualified immunity, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

1.  False Arrest

    a.  Violation of a Federal Right

A false arrest claim under 42 U.S.C. § 1983 requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff. *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir. 2005), *citing Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir. 2002). "For a police officer to have probable cause for arrest, there must be 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.'" *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580-81 (6th Cir. 2003), quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).

Defendants essentially argue that, because Judge Bernat denied Plaintiff's Rule 29 motion at trial, Plaintiff cannot show that probable cause was lacking; therefore, the false arrest claim fails as a matter of law. Indeed, the denial of a Rule 29 motion can be legally determinative on whether probable causes exists. *See Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007). However, a "state court's determination of probable cause will have no preclusive effect *if* evidence is presented supporting a claim that is based on a police officer's supplying false information to establish probable cause[.]" *Id.* (emphasis in original).

Here, Defendant Neville testified on behalf of the City during the trial over which Judge Bernat presided. The record before this Court shows that, at the bench trial, Defendant Neville testified that Plaintiff ignored his directive to protestors that they remain on the sidewalk and, on three occasions, stepped off of the sidewalk and into the street. (Doc. 30-5, PageID 722-25). Defendant Neville further testified that Plaintiff "refused" to exit the street. (*Id*. at 729).

Defendant Neville was the prosecution's sole witness. While Judge Bernat did indeed deny the Rule 29 motion after the prosecution rested, Plaintiff in this action has adduced sufficient proof to cast doubt on the truthfulness of Defendant Neville's testimony at the bench trial. In addition to offering her own affidavit contradicting Defendant Neville's account, Plaintiff offers Defendant George's deposition testimony, which at least partially contradicts Defendant Neville's testimony at the bench trial. While Defendant Neville testified in municipal court that Plaintiff "refused" to exit the street, Defendant George testified in his deposition that, when he arrested Plaintiff, she was on the sidewalk. (Doc. 24, PageID 320). It is unclear from the record whether Defendant George personally witnessed Plaintiff step into the street, after the directive to remain on the sidewalk. Regardless, based on Plaintiff's testimony and Defendant George's testimony, there exists a genuine dispute of material fact regarding the truthfulness of Defendant Neville's testimony at the bench trial; therefore, denial of the Rule 29 motion has no preclusive effect on the issue of probable cause. *Peet*, 502 F.3d at 566.

The question of whether Plaintiff can prove a violation of her constitutional rights as to each Defendant is more nuanced, because the Court must assess each named defendant's involvement in the arrest separately. In other words, has Plaintiff adduced sufficient evidence for a reasonable jury to find that *each* named Defendant violated Plaintiff's constitutional right to be free from false arrest? To recap: Defendant Neville ordered the arrest, Defendant George made the arrest, and Defendant White transported Defendant after the arrest. Defendant George relied in part on information originating from Defendant Neville, and Defendant White relied in part on information from Defendant George. *See* Section I.B-I.C, *supra*. This dynamic triggers the "collective knowledge" or "fellow officer" rule. This "doctrine recognizes the practical reality that 'effective law enforcement cannot be conducted unless police officers can act on

directions and information transmitted by one officer to another.'" *McCallum v. Geelhood*, No. 17-1418, 2018 U.S. App. LEXIS 21688, at *18 (6th Cir. Aug. 6, 2018), citing *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012). Where an officer asserts good faith reliance on the reports of other officers to avoid civil liability, courts consider: "(1) what information was clear or should have been clear to the individual officer at the time of the incident; and (2) what information that officer was reasonably entitled to rely on in deciding how to act, based on an objective reading of the information." *Humphrey v. Mabry*, 482 F.3d 840, 848 (6th Cir. 2007). To determine the extent to which the "fellow officer" rule absolves any Defendant of liability, the Court will conduct an officer-by-officer analysis.

### 1. Defendant Neville

The fellow officer rule is inapplicable to Defendant Neville, because Defendant Neville did not rely on information from other officers. Instead, he ordered Plaintiff's arrest because he allegedly witnessed Plaintiff ignoring his directives to remain on the sidewalk. As discussed above, Defendant Neville's account of events is contradicted by Plaintiff's testimony, and at least partially contradicted by Defendant George's testimony. Plaintiff's testimony if believed, plus the disconnect between Defendant George and Defendant Neville, would permit a reasonable trier-of-fact to conclude that Defendant Neville ordered Plaintiff's arrest without probable cause in violation of Plaintiff's constitutional rights.

### 2. Defendant George

Defendant George was at least a partial eye witness to the interaction between Defendant Neville and Plaintiff. Defendant George acted on Defendant Neville's order to arrest Plaintiff for disorderly conduct. While he differs *post hac* with Defendant Neville on what happened

immediately prior to Plaintiff's arrest, it does not appear that Defendant George was an eye witness to the entire interaction between Plaintiff and Defendant Neville. To the extent that he did not personally view a portion or portions of the interaction, Defendant George was not required to cross examine Defendant Neville on Plaintiff's earlier conduct before arresting Plaintiff. *Lyons*, 687 F.3d at 766. In other words, when another officer ordered Plaintiff's arrest for disorderly conduct, Defendant George was entitled to rely on that order. *Id.* It is Plaintiff's burden at the summary judgment phase to show that a state actor is not entitled to qualified immunity, and Plaintiff has not adduced proof suggesting that it was unreasonable for Defendant George to rely on the information and instructions originating from Defendant Neville. *Humphrey*, 482 F.3d at 848. Thus, the fellow officer rule applies.

### 3. Defendant White

Defendant White was not an eyewitness to any of the interactions between Defendant Neville and Plaintiff. In reliance on information from Defendant George, Defendant White transported Plaintiff to the justice center. Like Defendant George, Defendant White was entitled to rely on his fellow officer's instruction without "cross examining" him on the entire interaction. *Lyons*, 687 F.3d at 766. Again, the evidence offered by Plaintiff does not suggest that it was unreasonable for Defendant White to act on the information and instructions of his fellow officers. *Humphrey*, 482 F.3d at 848. Thus, the fellow officer rule applies.

### b. Clarity

On the false arrest claim, Plaintiff has adduced sufficient proof of a constitutional violation with respect to Defendant Neville's actions only. The Court thus turns to whether Defendant Neville's alleged conduct implicated one of Plaintiff's clearly established rights. "It

is clearly established that an arrest without probable cause violates the Fourth Amendment."

*Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997). Taking the facts and circumstances in

the light most favorable to Plaintiff (*i.e.*, that Plaintiff remained on the sidewalk and otherwise

complied with all police orders while demonstrating), Defendant Neville did not have probable

cause to believe that Plaintiff's conduct was prohibited by the disorderly conduct ordinance.

Reasonable officers could not reach a contrary conclusion. *See Rainey v. Patton*, 534 F. App'x

391, 399 (6th Cir. 2013). Accordingly, Count I will be submitted to the jury with respect to

Defendant Neville only. The Court enters judgment in favor of the remaining Defendants on

Count I.

### 2. Malicious Prosecution

#### a. Violation of a Federal Right

The Sixth Circuit "recognize[s] a … constitutionally cognizable claim of malicious

prosecution under the Fourth Amendment," which "encompasses wrongful investigation,

prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir.

2006). To succeed on a malicious prosecution claim under Section 1983, the plaintiff must

prove the following: First, "a criminal prosecution was initiated against the plaintiff" and that the

defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Sykes v.*

*Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). Second, "the plaintiff must show that there was a

lack of probable cause for the criminal prosecution." *Id*. Third, "the plaintiff must show that, 'as

a consequence of the legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as

understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Id*. at 309.

(quoting *Johnson v. Knorr*, 477 F.3d 75, 81 (3rd Cir. 2007). Fourth, "the criminal proceeding

must have been resolved in the plaintiff's favor." *Id*.

The Sixth Circuit does not require a plaintiff to prove malice to prevail on a Fourth Amendment malicious prosecution claim: "In the context of malicious prosecution, the Fourth Amendment violation that generates a § 1983 cause of action obviates the need for demonstrating malice." *Sykes*, 625 F.3d at 309.

1.   Aid in the Prosecution and Probable Cause

The Court will consider the first two elements together.

Plaintiff and Defendants agree that a criminal prosecution was initiated against Plaintiff. To sustain her burden on the first element, a plaintiff does not have to prove that Defendants were the ones who made the decision to prosecute. Rather, she must prove "that [Defendants] influenced or participated in the decision to do so." *Thorton v. City of Columbus*, 171 F.Supp.3d 702, 710 (6th Cir. 2016). "The Sixth Circuit has explained that to be liable for participating in a decision to prosecute an accused, 'the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating.'" *LeFever v. Ferguson*, 956 F.Supp.2d 819, 837 (S.D. Ohio 2013) (citing *Sykes,* 625 F.3d at 308 n. 5.)  But, an officer may be deemed to have influenced the decision to prosecute by "making materially false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *Legenzoff v. Steckel*, 564 F. App'x 136, 146 (6th Cir. 2014).

Here, this Court has already determined that Plaintiff has adduced sufficient evidence to place Defendant Neville's probable cause into question.  By ordering that Plaintiff be arrested for disorderly conduct, Defendant Neville was conveying to other officers that Plaintiff had disobeyed orders and violated Ohio law.  Information originating from Defendant Neville made its way to Defendants White, who signed the original criminal complaint, and Defendant George,

who later amended the complaint.  Drawing all inferences in favor of Plaintiff, Plaintiff has adduced evidence sufficient to establish that Defendant Neville influenced the decision to prosecute Plaintiff.  *Legenzoff*, 564 F. App'x at 146.  However, in signing the complaints, Defendants White and George were entitled to rely on information they learned from others. Ohio Rev. Code § 2935.09; *State v. Villagomez*, 44 Ohio App. 2d 209, 211, 337 N.E.2d 167, 170 (1974); *State v. Donahue*, 5th App. Dist. No. 2004-CA-20, 2005-Ohio-1478, ¶17 (articulating the Ohio Supreme Court's "reasonable grounds" standard).  *Accord*:  *Jouthe v. City of N.Y.*, No. 05-CV-1374 (NGG) (VVP), 2009 U.S. Dist. LEXIS 18163, at *38 (E.D.N.Y. Mar. 10, 2009) (granting summary judgment on malicious prosecution claim, reasoning that "Plaintiffs have provided no evidence that Officer Williams did anything other than disclose the information within his knowledge -- that is, what he learned from speaking with Mr. Johnson and Mr. Goldbourne, and what injuries they and Mr. Randazzo sustained -- and sign the complaint"). Plaintiff has not adduced proof suggesting that their reliance on information from other officers was unreasonable under the circumstances.  *Humphrey*, 482 F.3d at 848.  Furthermore, no authority before the Court supports that mistakenly filing the criminal complaint based on the wrong subsection – which was later corrected – triggers liability; and, no facts before the Court suggest that the need to amend was caused by anything other than a mistake.  Therefore, Plaintiff can sustain her burden on the first and second elements only with respect to Defendant Neville. The Court will address the remaining elements with respect to Defendant Neville only.

### 2.    Deprivation of Liberty

As to the next element, Plaintiff must demonstrate that "as a consequence of [the] legal proceeding" the plaintiff suffered a "deprivation of liberty…apart from the initial seizure." *Sykes*, 625 F.3d at 308-09.  Consequently, "the initial arrest alone is an insufficient deprivation of

liberty." *Noonan v. Cnty. of Oakland*, 683 Fed.Appx. 455, 463 (6th Cir. 2017). Here, there is no dispute that Plaintiff was incarcerated for three days; therefore, the Court finds that Plaintiff suffered a deprivation of liberty apart from her initial arrest.

### 3. Resolution in Plaintiff's Favor

As to the final element, Plaintiff must prove that the case was resolved in her favor. Plaintiff has provided a copy of the Hamilton County Municipal Court transcript that shows the case was resolved in her favor, when Judge Bernat rendered a not guilty verdict.

### b. Clarity

If Plaintiff was compliant at all times, as the jury could reasonably conclude, then her right to be free from arrest and prosecution for disorderly conduct would have been clear to any officer. *See Rainey v. Patton*, 534 F. App'x 391, 399 (6th Cir. 2013). Accordingly, Count II will be submitted to the jury with respect to Defendant Neville only. The Court enters judgment in favor of the remaining Defendants on Count II.

### 3. Infringement of Free Speech

### a. Violation of a Constitutional Right

In the context of a false arrest, a plaintiff generally states an additional first amendment claim where she asserts that the adverse state action was at least partially motivated by her exercise of an activity protected by the first amendment. *See, e.g., Logsdon v. Hains*, 492 F.3d 334, 344 (6th Cir. 2007). In the absence of such a theory, first amendment claims have survived where a plaintiff claims that "Defendants violated [her] First Amendment rights by restricting [her] speech on the basis of content." *Logsdon*, 492 F.3d at 346. Here, Plaintiff generally alleges that her illegal arrest "prevented" her "from engaging in constitutionally protected

expression and deprived [her] of her right to peacefully protest, to associate with others, and to petition the government for the redress of grievances," without reference to improper motive or content-based regulation. (Doc 1, PageID 7). Because Plaintiff's specific theory is not entirely clear from her pleadings and briefing, the Court looks to *Logsdon* for guidance in interpreting Plaintiff's claim.

In *Logsdon*, the plaintiff was an active member of the pro-life movement who engaged in "sidewalk counseling and peaceful protest outside abortion clinics[.]" *492* F.3d at 337-38. The plaintiff was arrested twice while standing on the sidewalk across from an abortion clinic. *Id*. at 338-39. On the first occasion, he had hung a sign on a neighboring property's fence that said "God has a plan for your baby." *Id*. at 338. A clinic patient complained about the sign, prompting the clinic president to remove the sign. *Id*. After retrieving it, the clinic president walked toward the clinic to destroy it. *Id.* The plaintiff walked onto clinic property to retrieve the sign, and promptly returned to the sidewalk, where he was later arrested for "criminal trespass and disorderly conduct." *Id.*

On the second occasion, the plaintiff had walked into "an adjacent public park and spoke to the patient through a chain link fence[.]" *Id*. at 339. Upon learning of the encounter, a clinic employee called the police to report a "trespass" by the plaintiff. *Id*. The plaintiff was thereafter arrested for "criminal trespass." *Id.*

The *Logsdon* plaintiff sued for violations of his first and fourth amendment rights. With respect to the first amendment claim, the plaintiff alleged that the defendants' "actions in removing him from the public sidewalk, when he had done nothing wrong, [was] a *per se* violation of his First Amendment freedoms." *Id*. at 344. In other words, the plaintiff claimed that "his arrests impeded his freedom of expression and of assembly." *Id*. The district court

dismissed both claims, but the Sixth Circuit reversed. However, the Sixth Circuit first noted that plaintiff did "little to clarify how Defendants violated his First Amendment rights." *Id*. The Court observed that the plaintiff did "not argue that Defendants arrested him in retaliation for his exercise of speech, nor could he, having disavowed this argument before the district court." *Id*. However, the Sixth Circuit ultimately found that the plaintiff had sufficiently pled that law enforcement illegally regulated his speech based on its content. *Id*. at 346. Specifically, the Sixth Circuit observed that the plaintiff's "complaint alleges that Defendants each '[d]emonstrat[ed] a blatant bias against [Plaintiff] and in favor of doing whatever [the clinic] wanted.'" *Id*. at 346 ("Construing Plaintiff's complaint liberally, Plaintiff alleges that Defendants were motivated by the content of his speech in removing him from the public forum, and not by any purported criminal trespass. Accordingly, Plaintiff has stated a claim that Defendants violated his First Amendment rights by restricting his speech on the basis of content.").

Admittedly, depending on the facts of a given case, a first amendment retaliation claim may be difficult to distinguish from a claim that state actors illegally regulated a plaintiff's speech based on its content. And, like the plaintiff in *Logsdon*, Plaintiff here has done little to clarify her first amendment theory. Like the plaintiff in *Logsdon,* who claimed that state actors "impeded his freedom of expression and assembly," Plaintiff in this case alleges that her illegal arrest "prevented" her "from engaging in constitutionally protected expression and deprived [her] of her right to peacefully protest, to associate with others, and to petition the government for the redress of grievances." Yet, her complaint is devoid of allegations that law enforcement was at least partially motivated to arrest her because she engaged in protected activity, which is an element of first amendment retaliation. *Thaddeus-X*, 175 F.3d at 394. Furthermore, it is difficult to read her first amendment claim as alleging illegal content-based regulation, which

might be more apparent if she alleged (for example) that another person or group engaged in the protest but was treated more favorably based on the content of the speech. In *Logsdon*, for example, the plaintiff at least alleged a "blatant bias against [the plaintiff] and in favor of doing whatever [the clinic] wanted.'" *Id.* at 346. Such an allegation is absent from Plaintiff's complaint. As a result, the Court is not entirely convinced that Plaintiff has properly alleged a first amendment claim. Indeed, it would not be unreasonable for this Court to conclude that, without allegations of improper motive or content-based regulation, the first amendment claim alleging that her arrest prevented her from further demonstrating is simply a repackaged fourth amendment claim. *See, e.g., Marcilis v. Twp. of Redford*, 693 F.3d 589, 604 (6th Cir. 2012) (rejecting First Amendment claim that was "essentially a repackaged version of plaintiff's malicious prosecution claim"); *Krug v. Cty. of Rennselaer*, 559 F. Supp. 2d 223, 239 (N.D.N.Y. 2008) (first amendment claim was "subsumed" by false arrest claim). That said, Defendants never challenged the sufficiency of Plaintiff's first amendment allegations. Indeed, it appears that they interpret Count III as a first amendment retaliation claim, because they argue that disorderly conduct, and not protected activity, motivated Plaintiff's arrest. (Doc. 27, PageID 541). Accordingly, the Court will turn to the sufficiency of plaintiff's proof of retaliatory motive, which is the only retaliation element Defendants appear to challenge.

"The analysis of motive in retaliation claims is well-developed." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Id.* (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on

summary judgment." *Thaddeus-X*, 175 F.3d at 399. Improper motive may be supported by circumstantial evidence. *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010).

With respect to plaintiff's proof, Defendants argue that Plaintiff cannot prevail as a matter of law because probable cause supported her arrest. Whether probable cause existed is significant circumstantial evidence of whether retaliatory animus fueled an arrest or prosecution. *Hartman v. Moore*, 547 U.S. 250, 260, 126 S. Ct. 1695, 1703 (2006); *see also Reichle v. Howards*, 132 S. Ct. 2088, 2095, 182 L. Ed. 2d 985 (2012). However, as discussed above, the existence of probable cause in this case remains an open question. Furthermore, the Court is unwilling to ignore the fact that – if believed – Plaintiff was arrested without probable cause by police while protesting police misconduct. Accordingly, Plaintiff has adduced sufficient circumstantial evidence of retaliatory motive; thus, the burden shifts to Defendants to "show that [they] would have taken the same action in the absence of the protected activity[.]" *Thaddeus-X*, 175 F.3d at 399. Again, Defendants' argument is premised entirely on the existence of probable cause to arrest Plaintiff for disorderly conduct (e.g., her purported unlawful entry into the street), the existence of which is disputed. Accordingly, Plaintiff has adduced sufficient proof of a first amendment violation.[2]

b. Clarity

A person's right to peacefully protest, consistent with any lawful time, place, or manner restrictions, is clearly established: "There can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally

---

[2] While Defendant Neville might point to the existence of other compliant protestors who were not arrested, the jury can decide what weight to give such evidence.

among the protections provided by the First Amendment." *McCurdy v. Montgomery Cty.*, 240 F.3d 512, 520 (6th Cir. 2001). To arrest such a person without probable cause violates that right.

However, for the reasons stated *supra*, Defendants George and White are entitled to qualified immunity. While they participated in Plaintiff's arrest, which in turn interfered with Plaintiff's ability to protest, Plaintiff has offered no evidence that they were retaliating against Plaintiff for her speech. Instead, the evidence supports that they were acting on information and orders originating from Defendant Neville, which led them to believe that Plaintiff had violated Ohio's disorderly conduct statute. Plaintiff has not argued or adduced proof suggesting that their reliance on information and orders from other officers was unreasonable under the circumstances. Thus, Count III will be submitted to the jury against Defendant Neville only.

### 4. *Monell* Claim

Plaintiff's claim against Defendant Neville in his official capacity is a claim against the municipality that employs him, *i.e.*, the City of Cincinnati. *Kentucky v. Graham*, 473 U.S. 159, 171, 105 S. Ct. 3099, 3108 (1985). Plaintiff claims that Defendant Neville was responsible for preparing and implementing the City's policy with respect to the rally on November 25, 2014, which policy was unconstitutional and resulted in the deprivation of her rights. (Doc. 1, PageID 7-8).

A municipality is civilly liable for its unconstitutional policies "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). There must be an "affirmative link between the policy and the particular constitutional violation alleged" for a

municipality to be held responsible. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985). The burden of proof is on the plaintiff to set forth the unconstitutional policy and link it with both the municipality and the injuries at issue. *Coogan v. Wixom,* 820 F.2d 170, 176 (6th Cir. 1987). *Accord*: *King v. City of Eastpointe*, 86 F. App'x 790, 801 (6th Cir. 2003).

Plaintiff argues that Defendant Neville was the "decision-maker" on November 25, 2014, implementing the policy that led to her arrest. Defendants disagree with this characterization, but argue that, even accepting it as true, Plaintiff fails to adduce evidence that Defendant Neville's purported policy was "unconstitutional." (Doc. 27, PageID 544) (directing the Court to Plaintiff's interrogatory responses). Indeed, Plaintiff's briefing focuses almost entirely on the fact the Defendant Neville created policies governing protestor arrests on November 25, and the fact that he personally ordered Plaintiff's arrest. However, Plaintiff adduces no evidence that the policy itself was unconstitutional. Absent such evidence, the Court enters judgment in favor of Defendant Neville/the City of Cincinnati on Count IV.

B. Claim Under State Law

1. Malicious Prosecution

a. Elements

Under Ohio law, to prevail on a malicious prosecution claim, the plaintiff must prove "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Swiecicki v. Delgado*, 463 F.3d 489, 503 (6th Cir. 2006). Here, Defendants cite the foregoing elements of an Ohio malicious prosecution claim, but fail to challenge Plaintiff's proof on any element other than the existence of malice

and probable cause. Therefore, the Court will assume without finding that each named Defendant instituted or continued in Plaintiff's prosecution, as those terms are interpreted under Ohio law. Because the Parties do not dispute that the case before Judge Bernat terminated in Plaintiff's favor, the Court will focus on the existence of malice/probable cause.

Ohio law defines "malice" in this context as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Twp.,* 56 Ohio St.3d 82, 564 N.E.2d 440, 443 (Ohio 1990). "Malice may be inferred by the absence of probable cause in appropriate circumstances." *Harris v. United States*, 422 F.3d 322, 327, 328 (6th Cir. 2005) (interpreting Ohio law). However, "mere negligence in making a probable cause determination is not sufficient to impose personal liability on the officer." *Johari v. City of Columbus Police Dep't*, 186 F. Supp. 2d 821, 831-32 (S.D. Ohio 2002) (interpreting Ohio law). For the purposes of a malicious prosecution claim, "Ohio courts define probable cause…as 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious [individual] in the belief that the person accused is guilty of the offense with which he [or she] is charged.'" *Id.* (quoting *Rogers v. Barbera*, 170 Ohio St. 241, 163 N.E.2d 162, 166 (Ohio 1960)).

In the present case, Defendants argue that they are entitled to summary judgment because Judge Bernat denied Plaintiff's Rule 29 motion for acquittal, which has a preclusive effect on the issue of probable cause. However, denial of a Rule 29 motion is not necessarily determinative under Ohio law. *See Schweller v. Schweller*, Nos. C-970183, C-970191, 1997 Ohio App LEXIS 5784, at *10 (Ohio Ct.App. Dec. 26, 1997)("The fact that a trial court overruled a [Rule] 29 motion is not in and of itself determinative of the issue of probable cause in a malicious-prosecution action.").

23

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Plaintiff has provided sufficient evidence of malicious prosecution with respect to Defendant Neville.  In addition to Plaintiff's own testimony, Plaintiff has offered testimony from Defendant George suggesting that Defendant Neville may have supplied Judge Bernat with false information. When the evidence is viewed in the light most favorable to the Plaintiff, a reasonable jury could reject that Defendant Neville acted negligently and draw an inference of malice.  However, there is no evidence that Defendants George and White acted maliciously.  Absent proof that it was unreasonable to rely on orders and information originating from Defendant Neville, they were entitled to rely on such information when signing the criminal complaints. *See* Section II.A.2, *supra*.

Accordingly, Plaintiff has adduced sufficient proof on the challenged elements of an Ohio malicious prosecution claim against Defendant Neville.

b.   Immunity

Plaintiff "acknowledges that the City of Cincinnati is immune on her state law claim for malicious prosecution under Ohio Rev. Code § 2744.03."  (Doc. 30, PageID 679).  So, instead, the Court will determine the extent to which the Political Subdivision Tort Liability Act shields Defendant Neville, as an employee, from liability.

Ohio Rev. Code § 2744.03(A)(6) provides that individual employees are immune from liability unless one of the following applies: (a) the employee's acts or omissions were manifestly outside the scope of employment or official responsibilities, (b) the employee's acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) liability is expressly imposed upon the employee by a section of the Revised Code.  In the context of a malicious prosecution claim brought

under Ohio common law, a legal inference of malice may be drawn where a plaintiff's prosecution is not supported by probable cause. *Harris v. Bornhorst*, 513 F.3d 503, 521 (6th Cir. 2008); *Thacker v. City of Columbus*, 328 F.3d 244, 261 (6th Cir. 2003). *Accord*: *Criss*, 564 at 443 (Ohio 1990) ("If the basis for prosecution cannot be shown, those who made the decision will appear to have acted with no basis--that is maliciously.").

Plaintiff argues that the individual Defendants in this case lose the shield of immunity under the Act because they acted with malicious purpose, triggering Ohio Rev. Code §2744.03(A)(6). Because Plaintiff has adduced evidence that Defendant Neville may have acted without probable cause and supplied false information to the municipal court, an inference of malice may follow. *See Harris*, 513 F.3d at 521. Thus, the Court finds that Defendant Neville is not immune from Plaintiff's state law malicious prosecution claim.

Count V will be submitted to the jury with respect to Defendant Neville only.

## III.    CONCLUSION

For the foregoing reasons, and consistent with the above, the Motion for Summary Judgement (Doc. 27) is **GRANTED IN PART** and **DENIED IN PART**. The following claims will be submitted to the jury, with respect to Defendant Neville only: Count I (false arrest), Count II (malicious prosecution under 42 U.S.C. §1983), Count III (first amendment retaliation), and Count V (common law malicious prosecution). The Court enters judgment in favor of the Defendants on the remaining claims. Counsel is instructed to confer regarding their collective availability for a status conference, and to contact the Court to schedule the same.

**IT IS SO ORDERED.**                                       _s/Michael R. Barrett_____
                                                                          Hon. Michael R. Barrett
                                                                          United States District Judge